UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AVAZPOUR NETWORKING SERVICES, INC.,
JIM AVAZPOUR AND KIM AVAZPOUR,

        MEMORANDUM
        AND ORDER

          Plaintiff,

        CV 12-3574

    -against-

        (Wexler, J.)

FALCONSTOR SOFTWARE, INC.

          Defendants.
-----------------------------------------------------------X

APPEARANCES:



    LIEFF, CABRASER, HEIMANN &
    BERNSTEIN, LLP
    BY: JONATHAN D. SELBIN, ESQ.
        MICHAEL JOSEPH MIARMI, ESQ.
        DOUGLAS IAN CUTHBERTSON, ESQ.
    Attorneys for Plaintiffs
    250 Hudson Street, 8th Floor
    New York, New York 10013-1413

    LIEFF, CABRASER, HEIMANN &
    BERNSTEIN, LLP
    BY: ERIC B. FASTIFF
    Attorneys for Plaintiffs
    275 Battery Street 30th Floor
    San Francisco, California 94111

    WILSON, ELSER, MOSKOWITZ,
    EDELMAN & DICKER, LLP
    BY: ADAM BIALEK, ESQ.
        RICHARD LYLE REITER, ESQ.
    Attorneys for Defendant
    150 East 42nd Street
    3 Gannett Drive
    White Plains, New York 10604

1

WEXLER, District Judge

In this diversity action, Plaintiffs assert causes of action arising out of their business relationship with Defendant. The complaint sets forth four causes of action pursuant to the laws of the State of New York, as follows: (1) gross negligence; (2) negligent misrepresentation; (3) breach of contract "(due to gross negligence)," and (4) breach of the implied covenant of good faith and fair dealing. Plaintiffs are Avazpour Networking Services, Inc., ("Avazpour" or "ANS"), Jim Avazpour and Kristy Avazpour (collectively the "Individual Plaintiffs"). The Individual Plaintiffs are the founders of ANS. Jim Avazpour is the President and former CEO of ANS. Kristy Avazpour served as the company's Vice President of Marketing from 2006 through October of 2010. Defendant is Falconstor Software, Inc. ("Falconstor").

The facts supporting all of Plaintiffs' claims arise out of Defendant's performance in connection with an upgrade it performed to Avazpour's storage area network, i.e. the system that allows ANS to remotely store and protect client data. Plaintiffs' complaint alleges, inter alia, that the analysis of an expert with whom they have consulted demonstrates that when conducting the upgrade Falconstor "recklessly disregarded appropriate practices in the data-security and storage virtualization industry."

Presently before the court is Defendant's motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss. Defendant seeks dismissal of all claims asserted on behalf of the Individual Plaintiffs on the ground that they lack standing. Additionally, Defendant seeks dismissal of Plaintiffs' first, second and third causes of action on the grounds that those claims, sounding in tort, are not viable under New York's economic loss doctrine, and fail to allege the existence of any duty separate and apart from Defendant's contractual obligations.

2

## BACKGROUND

I.   Factual Background

The facts set forth below are derived from the complaint, as well as documents properly before the court of which both parties have notice. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (on motion to dismiss court may consider pleadings as well as all documents incorporated therein by reference). At this stage in the proceedings, the facts are presumed true and construed in the light most favorable to Plaintiffs, the non-moving parties. Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).

### A.   The Parties and Their Business Relationship

ANS is a company located in Overland Park, Kansas that has been engaged, since 1997, in the business of providing information technology services. The Individual Plaintiffs are the founders of ANS and were, at relevant times, officers of that company. Each of the Individual Plaintiffs acted as personal guarantors of loans made to ANS in the course of its business operations.

Falconstor is a company located in this state that is engaged in the business, inter alia, of providing systems for storing and protecting client data. Prior to the incident forming the basis of Plaintiffs' complaint, ANS had been a client of Falconstor for approximately six years. At some point prior to July 13, 2010, ANS entered into an agreement pursuant to which Falconstor was to upgrade ANS's storage area network (the "Upgrade"). A storage area network, referred to as a "SAN" is defined in the complaint as "a collection of computers and storage devices that are connected over a high-speed optical network and are dedicated to storing and protecting data." The Upgrade was to be performed on a Falconstar system that was then in use by ANS.

3

The parties' intentions and agreement with respect to the Upgrade are memorialized in two agreements – an "Evaluation Agreement," entered into on April 22, 2010, and a "Statement of Work," dated July 8, 2010. Both agreements are referenced in the complaint and have been provided to the court. The Evaluation Agreement allowed ANS to consider Falconstor software products and to borrow its hardware during an "Evaluation Period," which could last as long as 180 days. After the Evaluation Period, ANS was to either license the evaluated programs and purchase the hardware, or return both to Falconstor.

The Statement of Work, dated July 8, 2010, followed the Evaluation Agreement and reflects the parties' commitment to go forward with the Upgrade. In addition to setting forth and describing particular tasks to be performed by Falconstor, the Statement of Work states the estimated time frame for performance of each task. Tasks performed pursuant to the Statement of Work were estimated to be performed between July 13 and 17, 2010. Falconstor was to provide the hardware and memory upgrade to be used in the Upgrade. The Statement of Work also sets forth the responsibilities of ANS in connection with performance of the Upgrade. ANS was responsible for, inter alia, acquisition of certain hardware, software and cables, making key staff available, and providing access to computer systems and devices necessary to support the Upgrade. Falconstor was to install the hardware and perform the transition from the existing SAN to the new system.

The Statement of Work contains an appendix setting forth specific contractual terms. Those terms include a broad limitation of liability provision stating that Falconstor shall have not liability for, inter alia;

> consequential, exemplary, special, indirect, incidental or punitive damages or any other loss

4

or expense (including lost profits) even if it has been advised of the possibility of such damage loss or expense.

The limitation of liability provision further states that it applies to:

all causes of action or claims in the aggregate, including without limitation to breach of contract, breach of warranty, negligence, strict liability, misrepresentations, claims for failure to exercise due care in the performance of services hereunder and any other torts.

The Statement of Work also addresses the issue of Falconstor's warranty. Specifically, it states that Falconstor warrants that its services will be performed in "a good and workmanlike manner," and further "disclaims all other warranties, express or implied, including any implied warranties of fitness for a particular purpose, merchantability or otherwise."[1]

B. The July 2013 Upgrade and The Consequences of its Failure

In July of 2010, Falconstor was to begin the Upgrade, as set forth in the Statement of Work. Prior to July of 2010, ANS informed its clients of the impending Upgrade, assuring them that with the exception of previously scheduled maintenance periods, the transition would be seamless. The complaint alleges, in great detail, a series of mishaps that occurred during the Upgrade which took place between July 13 and 22, 2010. The Court describes those mishaps below, and for the purpose of this motion, accepts Plaintiffs' version of the facts as true.

During the first phase of the Upgrade, which began on July 13, 2010, Falconstor copied data from the existing SAN to the new storage system. An inconsistency was revealed between the old system's transfer control protocol ("MTCP version 1") and that of the new system ("MTCP version 2"). For data replication to proceed, a Falconstar engineer rolled back both of ANS's near

---

[1] The Evaluation Agreement contains a similarly broad limitation of liability provision.

storage server controllers to the older version of the MTCP, and the Upgrade proceeded.

The second phase of the Upgrade, the attachment of all production servers to the new storage system, was completed on July 18, 2010. Plaintiffs take issue with Falconstor's performance on that date, noting that the process disabled many of its normal back-up and redundancy measures, leaving ANS's system in what is referred to as a "fragile" state. The Upgrade resumed on July 20, 2010, and continued through July 22, 2010. The Complaint refers to a series of problems that occurred during that time period, most of which were addressed though not, according to Plaintiffs, pursuant to the appropriate standard of care.

The phase of the Upgrade that occurred on July 22, 2010, is described as leading to disastrous consequences. On that date, after twice successfully and properly shutting down and re-booting ANS's system, Falconstor is alleged to have re-booted the system without first properly shutting it down. This is alleged to have resulted in the corruption of nearly all e-mail databases and file servers. Plaintiffs further allege that as a result of this re-boot, ANS was left with corrupted client data, outdated tape backups, and a complete and irretrievable loss of certain other client data. Plaintiffs alleged that the extended system downtime associated with the Upgrade resulted in the loss of client trust as well as a week's worth of their data. Although the new system was eventually up and running, it was operating in a crippled state until the replacement of a component part, a month after the Upgrade. Even then, the new SAN is alleged not to have achieved the expected high availability state.

Plaintiffs' complaint includes allegations regarding conclusions reached by a consulting expert specializing in computer networking, computer security, virtualization and file systems. Plaintiffs' expert concludes that Falconstor treated ANS's data with reckless disregard for the

appropriate practices in the data security and storage virtualization industries. In particular, Defendant's performance of the Upgrade is alleged to have been improper because Falconstor failed to inform ANS that the recommended hardware did not support nearline mirroring ("NLM") – a process of contemporaneous writing of data to both the "production" SAN and the "backup" SAN, alleged to have been a critical feature of ANS's network capabilities. Plaintiffs allege that despite Falconstor's knowledge of ANS's requirements, the network storage server ("NSS") used by Falconstor did not support the requested NLM. It is further alleged that Falconstor failed to prepare ANS for the Upgrade, and also failed to minimize the vulnerability of its systems during the Upgrade process. In short, Falconstor is alleged to have failed to adhere to the appropriate standards of its industry, to the detriment of ANS and its clients.

Plaintiffs allege more specifically that Falconstor's reckless conduct in carrying out the Upgrade corrupted, and made it impossible for ANS's clients to access their data. This is alleged to have caused a "crisis in confidence," that led to the loss of clients and devastation of ANS's business. Plaintiffs allege that because ANS was required to divert its resources to rehabilitation of its SAN, it was impossible to service existing clients and to cultivate new clients. The "calamitous" performance of the Upgrade is stated to have prevented ANS from pursuing a lucrative partnership it entered into with a major regional telecommunications provider. The downturn in business and revenue is alleged to have caused ANS to default on its credit obligations. That default is stated to have resulted in the financial ruin of the Individual Plaintiffs, who were personally liable on those financial instruments.

II. The Complaint

As noted, Plaintiffs' complaint sets forth four separate causes of action. The first two

causes of action – gross negligence and negligent misrepresentation – are asserted on behalf of ANS as well as the Individual Plaintiffs. The gross negligence claim alleges that Falconstor breached its duty to act with reasonable care by failing to recommend a SAN that was suitable for ANS's business needs. In particular, this cause of action states that Falconstor failed to comply with a representation in the Statement of Work regarding the configuration of NLM, and the alleged inability of the Upgrade hardware to support the promised feature. Plaintiffs' second cause of action asserts a claim of negligent misrepresentation. That claim states that Falconstor was engaged in a business relationship with ANS placing the parties in privity, or "so close as to approach privity." That relationship is alleged to give rise to a specific duty to correctly inform ANS as to whether the Upgrade would satisfy its business needs, and in particular, the need for NLM. Plaintiffs are alleged to have reasonably relied, to their detriment, on Defendant's misstatements and/or omissions.

Plaintiffs' third and fourth causes of action are asserted only on behalf of ANS. The third claim alleges breach of contract "due to gross negligence." It refers specifically to the Statement of Work, noting the requirement that Defendant configure NLM, and states that Falconstor breached its contract with ANS when it failed, through gross negligence, to configure NLM on ANS's SAN as part of the Upgrade. The fourth claim for relief asserts breach of the implied covenant of good faith and fair dealing. This claim asserts that Falconstor acted in bad faith and unfairly by using untested methods and code when attempting to resolve problems that arose during the course of the Upgrade, and by re-booting the SAN prior to a clean shut down of ANS's systems.

As a result of Falconstor's alleged tortious conduct and breach of its contractual obligations, Plaintiffs seek economic, monetary, actual, consequential, compensatory and punitive

damages.

III.    The Motion to Dismiss

Falconstor moves to dismiss all claims asserted on behalf of the Individual Plaintiffs for lack of standing. In particular, it is argued that Falconstar had neither a contractual relationship nor a legal duty to the Individuals that can form the basis of any claim. Falconstar moves to dismiss Plaintiffs' first, second and third causes of action on the ground that no claim is stated pursuant to these tortious causes of action and that Plaintiff ANS is limited to pursuing only its contractual remedies.

## DISCUSSION

I.    Legal Principles

    A.    Standards on a Motion To Dismiss

When considering a motion to dismiss under Rule 12(b)(6), allegations in the complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In meeting this standard, the complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.

    B.    Economic Loss Doctrine: Contract vs. Tort Liability

Under New York's economic loss doctrine, a party to a contract that suffers economic loss only (not personal injury) is, in most cases, limited to recovery pursuant to a claim for breach of contract and cannot recover economic or consequential damages in tort. Archstone v. Tocci Bldg.

9

Corp. of New Jersey, Inc., 101 A.D.3d 1059, 1060, 956 N.Y.S.2d 496, 498 (2d Dep't. 2012); see Bristol Village, Inc. v. Louisiana-Pacific Corp., 2013 WL 55698 *5 (W.D.N.Y. 2013). This doctrine recognizes that when a plaintiff suffers only economic loss, "it loses part of its bargain, and the parties are relegated to the contractual remedies they negotiated . . . ." Syracuse Cablesystems v. Niagra Mohawk Power, 173 A.D.2d 138, 142, 578 N.Y.S.2d 770, 772 (4th Dep't. 1991); see Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC, 832 F. Supp.2d 194, 205 (E.D.N.Y. 2010) (economic losses treated under contract law because parties "are in the best position to allocate risk at the time of their sale and purchase"). As noted by the Second Circuit, New York's economic loss doctrine prevents the recovery of "damages that are inappropriate because they actually lie in the nature of breach of contract as opposed to tort." Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 16 (2d Cir. 2000); see Prue v. Fiber Composites, LLC, 2012 WL 1314114 *4 (E.D.N.Y. 2012).

Applying the economic loss doctrine, New York courts have held that recovery of damages in tort is generally not available in an action alleging the poor performance of a contracted-for product. See, e.g., Bristol Village, 2013 WL 55698 *6; Hartford Fire Ins. Co. v. Atlantic Handling Systems, LLC, 2011 WL 4463338 *5 (E.D.N.Y. 2011); Shema Kolainu-Hear Our Voices, 832 F. Supp.2d at 205; see also Archstone, 101 A.D.3d at 1060, 956 N.Y.S.2d at 498 (negligence theory of recovery unavailable against a manufacturer where the claimed losses flow from damage to the property that is the subject of the contract, and personal injury not at issue); Weiss v Polymer Plastics Corp., 21 A.D.3d 1095, 1096, 802 N.Y.S.2d 174, 175-76 (1st Dep't. 2005) (same). This doctrine similarly precludes recovery in tort for the alleged negligent installation of a product. Bristol-Myers Squibb, Indus. Div. v Delta Star, 206 A.D.2d 177, 179, 620 N.Y.S.2d 196, 198 (4th

Dep't. 1994); Hartford Fire Ins. Co., 2011 WL 4463338 *5; Torres v. Baum, 2011 WL 2532945 *5 (N.D.N.Y. 2011) (allegation that a defendant failed to exercise proper care when performing contractual duties is insufficient to state a claim in tort).

On the other hand, even in the absence of personal injury, New York courts recognize a claim in tort under circumstances where a party to a contract can properly allege the breach of a duty owed to the plaintiff, that exists separate and apart from the contract. E.g., Sommer v Federal Signal Corp., 79 N.Y.2d 540, 551-52, 583 N.Y.S.2d 957, 961 (1992); Nielsen Media Research, Inc. v. Microsystems Software, Inc., 2002 WL 31175223 *7 (S.D.N.Y. 2002) ("well-established principle" of New York law "that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated"), quoting, Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 N.Y.2d 382, 389-90, 521 N.Y.S.2d 653, 656 (1987). While the duty forming the basis of a tort claim may be connected with and dependant upon a contract, a claim is stated only where the duty alleged arises from circumstances "extraneous" thereto to state a proper claim in tort. Clark-Fitzpatrick, Inc., 70 N.Y.2d at 389, 521 N.Y.S.2d at 656-57; see Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC, 692 F.3d 42, 58 (2d Cir. 2012); Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 17-18 (2d Cir. 2000).

Those cases allowing a plaintiff to claim both breach of contract and tort arising out of the same conduct note the different policies to be furthered by imposition of these different remedies. Specifically, it is recognized that contractual duties are imposed so that the parties can obtain the benefit of their bargain. Duties in tort are imposed apart from those imposed by contract, and are aimed at avoiding injury to others. New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 287 (1995) ("tort obligation is a duty imposed by law to avoid causing injury to

11

others"); Hartford Fire Ins. Co., 2011 WL 4463338 *5 (separate duty applies only to "limited class of cases in which a strong public interest in the careful performance of particular contractual obligations may give rise to a tort duty of due care") (citations omitted); Torres, 2011 WL 2532945 * 4. In such cases the duty is imposed not as a matter of contract, but as a matter of social policy. Sommer, 79 N.Y.2d at 551-52, 583 N.Y.S.2d at 961 (1992) (duty in tort imposed because in such cases "it is policy, not the parties' contract, that gives rise to a duty of care")(citations omitted).

A duty sufficient to support a claim in tort has been allowed, for example, in a case where parties are in a contractual relationship, and plaintiff can also make a claim for the violation of a "professional duty." Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 18 (2d Cir. 2000). Where such a duty exists, a plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct. See Hargrave v. Oki Nursery, Inc., 636 F.2d 897, 899 (2d Cir.1980). However, where a plaintiff is seeking merely to obtain the benefit of a contractual bargain through an action in tort, the tort claim is precluded as duplicative. Bayerische Landesbank, 692 F.3d at 58; e.g., New York Univ., 87 N.Y.2d 308, 317-18; see Hargrave, 636 F.2d at 899 (where "the only interest at stake is that of holding the defendant to a promise . . . the plaintiff may not transmogrify the contract claim into one for tort"); Torres, 2011 WL 2532945 *5 (same).

The New York Court of Appeals has set forth certain factors to consider when determining whether a plaintiff can state a claim for breach of contract alongside a claim in tort. Sommer, 79 N.Y.2d 540, 552, 583 N.Y.S.2d 957. First, courts are to consider the nature of the injury alleged. Id. at 552, 583 N.Y.S.2d at 962. Where "the nature of the harm" alleged is "catastrophic," the behavior involved may give rise to a duty of care that exists outside of the contract. E.g., Sommer, 79 N.Y.2d at 552–53, 583 N.Y.S.2d at 962. Next, courts consider the way in which the injury

12

occurred, and the harm that followed. Id. at 552, 583 N.Y.S.2d at 961. Courts look to whether the injury resulted from "an abrupt, cataclysmic occurrence," or "a process of failure of the product to perform as anticipated under normal business conditions." Sommer, 79 N.Y.2d at 552, 583 N.Y.S.2d at 961. Finally, courts consider the nature of the relief sought. Where plaintiff seeks "enforcement of the bargain, the action should proceed under a contract theory." Sommer, 79 N.Y.2d at 552, 583 N.Y.S.2d at 961.

Applying these principles in Sommers, the New York Court of Appeals held that a claim in tort was properly alleged. There, the court held that the defendant, a provider of central station fire alarm monitoring services, could be held liable in tort where it failed to timely report a fire signal to the local fire department. The delay was alleged to have resulted in $7 million in damages. The duty identified in Sommers was the duty arising from the nature of the defendant's services, i.e., that of informing firefighters that an alarm had been sounded. The court noted that the central station monitoring business was franchised and regulated by the City of New York. Additionally the Court of Appeals noted that defendant performed "a service affected with a significant public interest," and that the "failure to perform the service carefully and competently" could result in "catastrophic consequences." Sommers, 790 N.Y.2d at 552-53. The nature of the defendant's services was therefore held to gives rise to a separate duty of reasonable care to support an independent claim in tort.

The Second Circuit recognized the existence of a duty independent of a contract in Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 18 (2d Cir. 2000), and, more recently in Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC, 692 F.3d 42, 58 (2d Cir. 2012). In Hydro Investors, the Second Circuit affirmed the lower court's award of tort

13

damages based upon the defendant's alleged professional malpractice. There, the independent duty identified was that of the defendant engineering firm to properly express its professional opinion as to the functionality of a proposed hydroelectric plant. The firm's overly optimistic opinion as to energy output was held to be a sufficient basis upon which to proceed on a tort claim of professional malpractice. Hydro Investors, 227 F.3d at 18. Noting the professional nature of the defendant's opinion, the Second Circuit commented that tort recovery is reserved for that "limited class of cases involving liability for the violation of a professional duty." Id. at 18; see also 17 Vista Fee Associates v. Teachers Ins. and Annuity Ass'n of America, 259 A.D.2d 75, 82-83, 693 N.Y.S.2d 554, 560 (1st Dep't. 1999) (economic loss doctrine not applicable to malpractice claim against engineering firm).

More recently, in Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC, 692 F.3d 42, 58 (2d Cir. 2012), the Second Circuit again noted the general rule that a breach of contract will not give rise to a tort claim in the absence of a showing of the violation of a legal duty that exists independently of the contract. Bayerische, 692 F.3d at 58. The court went on to hold that the plaintiff, a non-party to the contract at issue, plausibly alleged the existence of a duty sufficient to survive a motion to dismiss a claim in tort. There, the duty identified was that of a portfolio investment manager to act "in good faith" as a "reasonable and prudent institutional managers of national standing . . . ." Id. at 59.

On the other hand, the mere use of language "familiar to tort law," does not transform a breach of contract action into a tort claim. Torres, 2011 WL 2532945 *4, quoting, Clark-Fitzpatrick, 521 N.Y.S.2d 653. Thus, a separate duty of care sufficient to support a claim in tort among contracting parties has not been found where, for example, a claim for professional

14

malpractice does not lie. E.g., Nielsen, 2002 WL 31175223 (refusing to recognize cause of action in professional malpractice against computer consultants). Nor has a tort claim been allowed to proceed where the nature of the damages alleged, however significant to the parties, do not implicate a larger public interest. E.g., Hartford Fire Ins. Co., 2011 WL 4463338 *8; Vitolo v. Mentor H/S, Inc., 426 F. Supp.2d 28, 35-36 (E.D.N.Y. 2006) ("imposition of an independent duty of care in an arms-length business transaction is reserved for the most serious of situations directly affecting the public at large, and not sophisticated parties"), aff'd. mem., Vitolo v. Mentor H/S, Inc., 2007 WL 28302 *2 (2d Cir. 2007).

Based upon the foregoing legal principles, Plaintiffs' claims sounding in tort can survive this motion only if they plausibly allege the existence of a duty, separate and apart from the parties' contracts, that is properly alleged to have been breached. The court turns to the merits of the motion and, first, to that issue in particular.

II. Disposition of the Motion

A. The Claims Sounding in Tort are Dismissed

A review of the detailed factual allegations of the complaint, as well as the parties' agreements, leads the court to conclude that Plaintiffs set forth no plausible allegation of the breach of duty necessary to state a claim in tort. As noted, ANS and Falconstor entered into two agreements. Those agreements provided for ANS to evaluate and to thereafter purchase, an upgrade to its existing SAN. Pursuant to its agreement with ANS, Falconstor was required, with the cooperation of ANS, to properly install the purchased system. For the reasons set forth below, the court holds that any duty arising from this contractual obligation arises directly from the contracts at issue, and does form a separate and independent duty, the breach of which can support

15

a claim in tort.

As discussed above, New York law is clear in limiting imposition of a duty, the breach of which can support a claim in tort, to a limited class of professionals and circumstances. Falconstar is a provider of computer software, hardware and related installation services. While such goods and services require specialized knowledge, New York State law does not "recognize a cause of action for professional malpractice by computer consultants." Nielsen, 2002 WL 31175223 *7, quoting, Richard A. Rosenblatt & Co. v. Davidge Data Sys. Corp., 295 A.D.2d 168, 169, 743 N.Y.S.2d 471, 472 (1st Dept. 2002); see also Columbus McKinnon Corp. v. China Semiconductor Co., 867 F. Supp. 1173, 1182 (W.D.N.Y.1994) ("no basis in law for extending the doctrine of professional malpractice to cover independent computer consultants."); RKB Enters. Inc v. Ernst & Young, 182 A.D.2d 971, 971-72, 582 N.Y.S.2d 814, 816 (3d Dep't. 1992) ("no cause of action for professional malpractice in the field of computer consulting").

Moreover, application of the factors set forth by the New York Court of Appeals in Sommers, construed in the light most favorable to Plaintiffs, does not support imposition of a duty. While the failure of the Upgrade may have resulted in damage to certain data, such damage is not the type of widespread catastrophic harm envisioned by the Court of Appeals in Sommer. Similarly, any harm that occurred was not the result of an "abrupt, cataclysmic occurrence," but due to installation and re-booting issues. Nor does the harm alleged to have been caused by the failed Upgrade begin to implicate the type of public interest found to exist in Sommers. While the damage to ANS's system may have been substantial, such harm involves private, and not the public interest. In sum, the court holds that while Plaintiffs' complaint adequately alleges facts supporting its claim that Falconstor botched the Upgrade, it does not plausibly allege any facts,

even if construed in the light most favorable to Plaintiffs, that can be relied upon to support any claim in tort.

B. Remaining Claims

The court's holding regarding the lack of any extra-contractual duty requires dismissal of Plaintiffs' first and second causes of action alleging gross negligence and negligent misrepresentation. See RKB Enterprises Inc., 182 A.D.2d at 972, 582 N.Y.S.2d at 816 (lack of duty sufficient to impose professional malpractice duty also precludes claim of negligent misrepresentation). Plaintiffs' third claim alleges breach of contract "due to gross negligence." New York law does not recognize a cause of action for a "negligent" breach of contract. Hartford Fire Ins. Co., 2011 WL 4463338 *5; Tevdorachvili v. Chase Manhattan Bank, 103 F. Supp.2d 632, 644 (E.D.N.Y. 2000). It follows then that no claim can be stated for a "grossly" negligent beach of contract. Tevdorachvili, 103 F. Supp.2d at 644; City of New York v. 611 West 152nd Street, Inc., 273 A.D.2d 125, 126, 710 N.Y.S.2d 36, 38 (1st Dep't. 2000) ("claims based on negligent or grossly negligent performance of a contract are not cognizable").

Rather than outright dismissal of the third cause of action, the court will construe that cause of action as setting forth a claim of breach of contract. The fourth cause of action seeks recovery for breach of the implied covenant of good faith and fair dealing.    Breach of an implied duty of good faith "is merely breach of the underlying contract." Giller v. Oracle USA, Inc., 2013 WL 646153*2 (2d Cir. 2013), quoting, Fasolino Foods Co. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir.1992) Thus, where, as here, the parties have an express contract, such a cause of action is properly dismissed as redundant. Quail Ridge Assocs. v. Chemical Bank, 162 A.D.2d 917, 919, 558 N.Y.S.2d 655, 657 (3d Dep't 1990) (plaintiff "may allege bad faith as part of its

17

contract claim, but bad faith does not provide an independent basis for recovery"); see also City of New York, 273 A.D.2d at 125, 710 N.Y.S.2d at 38 (breach of contract defense renders "assertion of a separate defense for breach of the implied covenant of good faith and fair dealing" "improperly duplicative").

The court expresses no opinion as to the merits of the breach of contract claim that remains. The parties are directed to continue to engage in discovery according to the schedule ordered by the assigned Magistrate Judge.

## CONCLUSION

For the foregoing reasons, the court grants Defendant's motion to the extent that it orders dismissal of all claims based in tort. The Court therefore dismisses the claims for gross negligence and negligent misrepresentation. The court construes the claim alleging grossly negligent breach of contract as a claim asserting breach of contract. The court dismisses the claim alleging breach of the implied covenant of good faith and fair dealing as redundant in light of the claim for breach of contract. The Clerk of the Court is directed to terminate the motion appearing as docket entry number 21 in this matter and the parties are directed to continue with discovery with respect to the breach of contract claim that remains.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
March **11**, 2013